May it please the Court, Corey J. Albright on behalf of the Yakima Indian Nation. I would like to request that I can reserve five minutes for rebuttal, please. There is one issue of law before the Court today, and that is whether the legal incidence of the Washington cigarette tax falls on Yakima retailers in violation of federal law. If it does, then because the immunity of Indians from state taxation is absolute, the tax is invalid unless and until the legislature amends the operative provisions of the scheme to shift the incidence. And that is something that the legislature remains free to do. Can I just ask you this? This, of course, is a long-running series of cases, but in the Colville case, the Supreme Court accepted the legislative scheme as it existed at that time. The current legislative bill has in subparagraph 4 of section 82.20.050 stated the intent of the legislature that no Indian, and I use that term in a non-technical sense, but someone who qualifies as a member of the tribe is not supposed to be taxed, but they want to be sure that everybody else is taxed. What's wrong with that? The Supreme Court makes it clear that the intent of the legislature in this instance, unlike the case before, is very, very important. Why is that not critical in this case? Your Honor, we do not dispute the legislature's statement of intent. However, this Court held emphatically in the Hammond case that the Court must consider the operative provisions of the tax scheme, and if there is a conflict between the operative provisions of the tax scheme and the legislature's statement of intent, then the operative provision must control. Okay, let's go back to this then. It's too bad we don't have a chart here in a way, but if you have the Colville, the bill as it existed at the time the Supreme Court decided the Colville case, and you moved to the right, the changes in the law of the state of Washington, what are those changes that changed the results in this case from your perspective? Your Honor, there are four critical changes. Okay. And the umbrella issue is that at the time of the Colville decision under the 1976 scheme, wholesalers and retailers were treated exactly the same. Both could possess unstamped cigarettes and affixed tax stamps. Both could defer payment of the tax until they received the tax, until they sold the cigarettes to the downstream customer. Both received compensation for acting as transmittal agents, and both... Actually, wasn't it for, maybe it's the current bill, now it's for affixing the stamp, right? Was that not true then? That was true then, Your Honor. Yeah. And that compensation, it is for affixing the tax stamp. This Court in Hammond indicated that the bottom line is whether or not the party is being compensated in some fashion for acting as a transmittal agent. The administrative justification... I'm not sure I agree with that. I thought that the only, there was no requirement that someone be compensated for being a transmittal agent. Do you have some authority to do the contrary? Your Honor... I'm not talking about for affixing the stamp. That's really clear that they are being compensated for that. But what authority do you cite for the concept that not only the members of the Indian tribe are the retailers there, but any retailer is entitled to compensation just for basically being the transmittal agent? Well, Your Honor, that is the point, is that they are not entitled. But nobody is, not just the Indian retailers, but any retailer in the state of Washington. Is that correct? That is correct. That is correct. However, so returning to the distinctions from the 1976 scheme in Colville. Right. Finally, retailers and wholesalers were unequivocally entitled to the same refunds under the scheme at the time of the Colville decision. Why do you make such a point of refunds? I mean, unless the retailer is running out of business, they'll always have occasion to use the stamp, won't they? Your Honor, refunds are very important because they permit the court to distinguish between the legal incidence from the tax... No, I'm talking about the retailer. He can always use them, can't he? Your Honor, if the retailer sells the cigarettes, he can pass the economic burden down to the customer. At some point, if he stays in business, he'll sell them. That is incorrect. Why? There are two circumstances. One is that the Attorney General of the state of Washington has a list of approved brands for sale in the state. It's a what? It's an approved brands list. It's very complicated, but there is a list of cigarette brands that are approved for sale. And if your cigarettes are not on that brand, on that list, they are barred from being sold in the state. And does the list keep changing? It changes. Exactly, Your Honor. It changes over time. And if a retailer is left holding cigarettes, upon which they have remitted the tax upstream to the wholesaler, and those cigarettes are removed from the approved brands list, the plain language of the statute says that the refund is available only to wholesalers and distributors that have lawfully affixed tax stamps. How often does that occur? How often does the list change? No. I do not know specifically, but it has to do with a manufacturer's payments to the state. Well, I mean, we don't want to consider mere hypotheticals or something that happens once in the blue moon. So what's the other example? The other example is when cigarettes become damaged or unfit for sale, and that refund applies to dealers. And dealers, the state does not dispute, are persons under the scheme that have fixed tax stamps. Retailers may not lawfully affix tax stamps. Counsel, with respect, I look at the Washington Administrative Code, Section 458-20-186, Prenn 303, that indicates that any person may request a refund. It doesn't limit it to wholesalers. Your Honor, the administrative regulation, which the district court pointed to, does refer to any person. Right. The statute refers to dealers, which are persons in a fixed tax stamp. Are you saying that the regulation is trumped by the statute? Well, I am saying that an administrative agency cannot promulgate a regulation that is inconsistent with the plain meaning of the statute. What have they done? Does the record indicate what has happened in terms of, say, an Indian retailer who wants to return, say, damaged cigarettes? Has that retailer been able to obtain a refund? Do we know? Your Honor, there is, to my knowledge, no evidence in the record regarding the actual application of the refund provisions. What there is evidence in the record of is the Department of Revenue's administrative practices and policies, which are set forth in the form that is used to apply for a refund, in the department's own tax manual, and in its Web application. All of those materials reflect that the refund is available only to wholesalers. It is not available to retailers. And so what this means is that a retailer is left holding the tax buck, can be left holding the tax buck. Again, that's getting back to my colleague Judge Noonan's point. That's a hypothetical, is it not, unless there's some evidence that an Indian retailer has tried to obtain a refund, say, based on damaged cigarettes. Say they have two cartons, two boxes filled with cartons of damaged cigarettes, and they want to return those. And if that were rejected by the state, then you'd have some evidence. But otherwise, it sounds like you've got, at least from your perspective, contradictory statutes, regulations, and what did you call that manual? It's the department's tax manual. Okay, the department's tax manual. It's got inconsistent guidance, if you will. But we don't really know from the record, if I'm understanding you correctly, what actually happens when an Indian retailer tries to return, say, damaged cigarettes, do we? Your Honor, I would answer that question by saying that this is not a hypothetical. Where the legal incidence of a state tax resides is not an as-applied question. No, I understand. I'm just trying to understand, practically speaking. As I look at the regulations, it's not limited to wholesalers. That's an issue of law. I can look at that and say, okay, that doesn't bar an Indian retailer from getting a refund. So I'm asking whether there's anything in the record that suggests that the regulation is applied in a way that would render what I just said essentially meaningless. That would have some application, even though it's based on the overall as opposed to an as-applied. As I said, with the department's practice, as we brief in detail, pages 30 to 33 of our opening brief, their practice, we believe, does not show that the refund is available. The important point also, Your Honors, is that setting aside the refund provision entirely, all of the other factors under Chickasaw Nation and Hammond, counsel uniformly to the conclusion that the legal incidence of the tax falls on retailers, whether Indian or non-Indian. There is a mandatory pass-through provision requiring wholesalers to pass on the tax to retailers. Before you get to that, I have one quick question on what we just talked about. Does the record indicate anything about whether wholesalers are Native Americans or not, or the percentage? Because this may relate to how they treat the wholesalers and retailers, and to some extent I think it's a little backwards here. What does the record indicate about wholesalers either being protected as Native Americans or not? The wholesalers in this case, when we're talking about the distribution, the flow of cigarettes, stamped cigarettes to the Yakima Indian Reservation, the wholesalers are off-reservation, non-Indian wholesalers. Uniformly? Uniformly. Completely. So it strikes me as odd that it gives them pass-through protection but not the retailers. It seems backwards, but. Judge Noonan. You started out to show how this is different from Colville. Not your whole burden, and you, well, we've discussed the refund. Now, what other significant difference is there from Colville? The most critical difference, Your Honor, is that there is a conflict between the legislature's statement of intent and the operative provisions of the tax scheme, and that did not exist in Colville. There was no conflict between the operative provisions and the legislature's intent. But the fact that wholesalers are guaranteed something and the retailers aren't doesn't mean the retailers are stuck. They can pass it on, too, if they want. Well, Your Honor, as you explained in your Yavapai-Prescott decision in 1997, the Supreme Court has highlighted the clear distinction between the legal incidence of the tax and the economic burden. A consumer is always going to receive the economic burden of the tax because that burden will be passed downstream through the chain of distribution. That's reality. That's economics. What the legal incidence allows you to do is to determine where the tax buck stops, and if someone is left holding the tax buck. I disagree about what you said about the economic burden, and one of my key concerns in this whole thing is no one is talking about elasticity of demand and the interplay of an inelastic demand curve on what gets passed on. And I actually find I think you're weakening your argument. I think you should say under certain circumstances, if you're facing a certain elasticity of the demand curve, the retailer will get stuck with both the economic burden and the legal incidence. That's a good argument for you. That's a softball, as we might say. Your Honor, it would be a wonderful pitch that I would love to swing at if the Supreme Court in Chickasaw Nation hadn't explicitly declined to make that the focus of inquiry. The Supreme Court said we can't make economics our guide because it is too complicated. We must look at legal burdens, and that is where the focus of our argument is. Legal incidences. Legal incidence. It didn't explicitly say that economic burden can never equal legal incidence, and I actually think an elasticity analysis can comport with a legal incidence test. Where is the tax ultimately hitting? It may be consistent with there may be times when incidence and economic burden are together, but here the State basically hangs its hat on this pre-collection obligation, which the State effectively concedes that the operative provisions of the scheme result in the incidence falling on retailers, but says that for Indian retailers, if so facto, the legislature has recited that that tax instead becomes a pre-collection obligation. The pre-collection obligation, however, is just semantic because it does not alter the manner in which the scheme actually applies vis-a-vis Indian and non-Indian retailers. Both are required to do the same thing. The State has no ability to verify or to enforce that an Indian retailer has fulfilled this so-called pre-collection obligation, and it's useful in this regard to contrast the State's own retail sales tax scheme, which we discuss in our brief at page 26. The statute in the Mississippi Tax Commission case, discussed at page 14 of our reply, is also useful. Those statutes require record keeping, and what those records show is that the tax, as opposed to purely the economic burden, is passed down so that the State can verify, have you in fact charged the tax to the consumer? And that is something that in this case is done for wholesalers. Wholesalers must keep meticulous records showing that every retailer who buys cigarettes has paid that tax. However, that obligation does not exist for retailers, whether Indian or non-Indian, so there is no way for the State to verify this so-called pre-collection obligation. It's a minimal and cosmetic change in which the legislature has sought to reassign the incidents simply to suit its interests. Do you want to reserve your time? It's up to you, but if you want to, then we'll hear from the State, and then you'll have your chance for rebuttal. Good morning. My name is Heidi Irvin. I've got a little bit of an ear problem, so if I'm yelling, will you please let me know? I'm representing Governor Christine Gregoire and the other State officials in this action. The test for determining legal incidents, as we know, is the fair interpretation of the taxing statute as written and as applied, and under the fair interpretation of Washington's cigarette tax statute as written and applied, the legal incidents of this tax never falls on tribal retailers. The district court correctly granted summary judgment to the State on this claim, and we ask that this court affirm that ruling. Could you define legal incidents for me quickly, or is it beyond definition? It's referenced in your brief. I've read it and reread it. Yeah, I think we put a definition in a footnote from Black's Law Dictionary or something saying that it's the obligation, where the statute puts the obligation to pay the tax, or on whom does the statute put the responsibility for the tax. I think there's some confusion in the case law as to what it means precisely, because, for instance, that Mississippi case, U.S. v. State Tax Commission of Mississippi, specifically says that it's not just who pays. In that case, the out-of-state liquor distillers were being required to charge the tax or the amount of the tax on sales they made of liquor to in-state military installations. So even though it didn't show up on a receipt, for instance, to the military installation, and they weren't officially, quote, unquote, paying. I think if I was a Native American and I felt I was being taxed inconsistently with treaties and someone told me that under the doctrine of legal incidents it was all legal, I might wonder what that meant and why I couldn't even understand the term by which I believe a treaty is being violated. By I, I mean the Native American. Treaty rights would be an entirely separate inquiry if, even if legal incidents is satisfied and there's no problem there with a state statute, if the imposition of the tax did violate a particular tribal member's treaty, then that would be a different basis on which federal law would preclude that tax. There are four reasons, basically, why four features of RCW 8224 considered together establish why the district court was correct in this case. The first is the feature of the statute that the tax is imposed on the sale, use, handling, distribution, consumption, or possession, and thus the legal incidence is not fixed on a particular person or at a particular level of the distribution chain. However, the tax is imposed at the time and place of the first taxable event and upon the first taxable person. Third, if the person on whom the tax would otherwise apply is not taxable, then the tax shall not apply, and that's what I've referred to as the backstop provision. And this, by the way, is a substantive provision of state law. It is not merely a recognition of the supremacy law. It's no different than if the legislature had said this tax shall not be imposed on Indian retailers selling on the reservation or this tax shall not be imposed on federal instrumentalities selling to military personnel. It's the same. It's a substantive statement of state law. But what level of deference do we have to give to an expression of state intent in this kind of a situation? Has the Supreme Court spoken to that? Well, as you know, Your Honor, because I think you brought it up, or maybe it was Judge Noonan, the Colville Court did, in fact, rely on that statement of intent. Every court that I know of has relied on statements of intent, and the Hammond case stands for the proposition that, you know, if there's an inconsistency between the statement of intent and the rest of the statute, then you don't give it the kind of weight that you might if it's not inconsistent. So in this instance, we've got, of course, Colville. We've got the Supreme Court blessing the tax scheme as it existed at that point. We have some changes in the law since that point, but we have a strong, renewed statement of legislative intent that Native American purchasers are not to be taxed.  Or do we look at the various criteria that seemingly might be a little different, such as the lack of a pass-through clause, the 30-day payment period, the compensation for pre-collection obligations, and the refund issue? Well, the alleged lack of a pre-collection ‑‑ excuse me, the alleged lack of a pass-on and collect clause is a fiction. We have an express pre-collection obligation, which is defined as an obligation on the part of that tax-exempt seller to collect the tax instead from their buyer who's taxable. And that's exactly the same obligation that the court in the Colville case implied from the first taxable event type language of the intent. So it's all working together. So that is one difference now. Is it all working together? I want to follow up on what Judge Smith just said. Is legal incidence best determined by a statement of legislative intent or the operations of the statute or market realities, particularly when faced with different demand elasticities? In other words, the state can say whatever they want, but if raising the price of a product is such that it won't be bought, I suspect the price won't be raised and it will be sold at a lower price. That would be a demand elasticity sort of argument. And it strikes me as such an incredible fiction to either say legislative intent or the right to pass through is determinative of this, despite the fact that in reality that might never be happening. Your Honor, the state's position has never been that legislative intent alone is determinative or that any other feature by itself is determinative, other than that the Supreme Court has said if you have an express pass-on collect, that's dispositive. That answers the question as a matter of law, and we do have that here in the instance of the tax-exempt sellers. But to answer your other question, I think this is – Wait. You can answer the other question, but when you say an express pass-through is determinative, dispositive, what if that increase in price results in no cigarettes being sold because they start chewing gum or sunflower seeds? Well, that does relate to your other question, Your Honor, because this is one point on which the Yakama Nation and the state agree. The court in Chickasaw said we're not going to base it on the economic realities because of the need for a tax scheme to be administrable and predictable. And that is something that's required both for the taxing body that's trying to collect the tax, but also the taxpayers. They have to know how it works and how it's going to work and not have to be depending or putting forth proof on something like that. Now, I think it's not in the record, but I think that cigarettes are – the demand is pretty elastic. I guess I remember that from some prior days. Let's say it's addictive and therefore it's inelastic. But go ahead. Well, we raise our prices. We have a pretty high tax level in the state of Washington on cigarettes, and there is an impact. But, again, that's not part of our record here. But that's why we don't rely on the economic realities. We've been told by the Supreme Court that's not a way that's going to work. And as somebody who regularly represents the State Department of Revenue, I certainly would agree with that. It's significant that the court in the Colville case ruled in favor of the state with only two of the four features that are in the statute today. It noted that the tax could be imposed on anyone in the distribution scheme, so there's nothing problematic about the tax being it could be this, it could be that. And it rejected the claim that the legal incidents fell on the Indian sellers expressly. Well, that was incorporating the district court, though, because of the language in the intent section about the first taxable event. And then in 1985, the Supreme Court again reaffirmed the approach in the Colville case, in the Timowavy case, which is the case that enunciated the fair interpretation test that we apply today. And it used Colville as an example of what that is. Since then, the legislature, of course, added the language, first taxable person in addition to first taxable event, and that's from 1995, along with that express pre-collection obligation, which is not required for all retailers, but it is required for those retailers who are themselves tax-exempt. This is probably not a key point, but to show that it – rather to address in part the issue to whom it's directed, it's very common in statutory schemes, federal and state, is it not, to have this applies to everybody unless you fall into one of these exceptions. Whether it's the 33 Act of the Securities Act or whatever, it applies to everybody unless you fall into one of these. And this statute, it seems to me, seems to be one of those statutes. We're going to apply this to – all the wholesalers are going to collect this. Everybody's going to get it. Now, there are certain exceptions that apply here, and you've got this statement of intent, and you've got these other issues. The state takes the position that the Native Americans are being treated essentially the same way as everybody else, and there's no problem. Isn't that a fair, general view of this statute? I believe so, Your Honor. I think the state's position is we're treating the tribal retailers as they ought to be treated as tax-exempt, but having an obligation, which was approved in the Colville case, to instead collect that tax from their buyers. Let me give an example. If we were to go back to Revolutionary Times, I believe this country was partly founded on folks a little angry about a tax being imposed on a product. If Parliament had declared the legal incidences of this tax will not fall on angry colonists, that wouldn't have made a difference. It still would have been a reality that the legal incidence was falling on angry colonists, and that he still would have been dumped into the bay and would have a new nation. What I'm troubled with is Parliament can't make it so because it says it's so, and I don't think the state of Washington can make something so simply by saying it's so. Well, Your Honor, I guess the answer to that is that legal incidence is always going to be primarily a matter of drafting by whatever state legislature is putting together whatever statute you're looking at. And so that's why you have to look at the statutory scheme as written and applied. And so, you know, if you want to reduce it to the argument the Yakama Nation makes, it's all just a bunch of semantics, well, then we don't end up anywhere satisfactory. We don't. We're back at economic realities, which the Supreme Court in Chickasaw said we can't go there. So, you know, like I said before, we're not advocating you just rely on legislative intent or you just rely on anything else. Looking at what constitutes a legal incidence requires the court to look at what events trigger the tax and who is required to, you know, pay or to collect or to remit the tax. Those words have different connotations. Express statements in some statutes of who bears the legal incidence. Express statements of who is not subject to tax. We have one of those in our case here. Express requirements that the tax be actually passed down to a purchaser. We have one of those here in the case of the tax-exempt sellers. And express statements of legislative intent. Well, one of your, in fact, your lead argument might be this is the same statute that was previously approved. We heard the appellants list four critical changes where this isn't the same statute. What do you think of those four changes? Or do you just say we don't get there because of the legislative statement of intent? What about those four critical? And why would it be that the wholesalers who are not Native Americans are specifically given this right to pass through, but the retailers who are the Native Americans at issue are not given that right? Isn't that a major difference? Your Honor, the wholesalers under the assumption that we're using in this case, that one provision, 8224.020, subsection 2, it strongly implies that wholesalers are required to pass that tax on to retailers. Agreed. So we're assuming that's the case. So we know that the non-Indian wholesalers don't get the legal incidents. So they pass it on. They pass it down. And then we also know, because of the provision in RCW 8224.080, subsection 2, that those tax-exempt retailers, tribal retailers, they are also required to pass it down to those sellers. So it's not that they're being treated differently. In this instance, they're being treated exactly the same. They're required to pass it down. So ultimately, it's going to be legal incidents in the situation that we're talking about here is going to land on the consumer, which is really where the legislature wanted it anyway, I think, ultimately. That's the goal is to make sure that the cigarettes are going to be including that price of that stamp.  Why did your opponent insist that there's no pass-through? Has he not read that provision or what? Well, the position that they took in the opening brief was that it was in an intent section, even though it's a declarative statement of thou shalt, that it could be disregarded because it's in an intent statement. So that was their position in the opening. But you're saying it's part of the law of Washington. Absolutely, Your Honor. It's mandatory. It would have been, and it was implied as a requirement by the court in Colville before it even exists, based on the other provisions. Yeah, but on this one, you're saying the legislature has made it mandatory to pass it on. Absolutely, Your Honor. All right, that's fine. So I don't have enough time left to address all of the four things that they say have changed, and we did address them all in the brief, but I'm going to talk about the refunds for a moment. They're trying to create an issue of fact in their reply brief where none exists. The evidence is undisputed that the Department will allow refunds to retailers, and it in fact has done so in at least one incident. What's the citation on the record on that, please? I'm going to give you excerpts of record 117, 120 to 122, 126 to 27, 164, and supplemental excerpts 14 to 16 and page 39. And let me just summarize what that evidence is. First of all, as you already pointed out, the Department of Revenue's Rule 186 allows refunds to any person. And the statute that allows the refunds, by the way, 82-24-210, says the Department may promulgate rules. Well, the Department obviously recognized that there might be situations other than with wholesalers where a refund was merited. So in its own rule, it has allowed that, and that has stayed the same for many, many years. What's your response to opposing counsel's reference to a manual, a tax collection manual that is used that he says is contrary to the regulation? The manual is an internal manual used by Department of Revenue employees, and it mentions it talks about the process for giving refunds to wholesalers. It doesn't mention retailers. But it doesn't exclude it. It just doesn't talk about it. No, it doesn't. And what the actual as-applied that we have here, the as-applied portion of the Chemehuevi test is that Lee Smith, who administers this particular program on a day-to-day basis, testified in his deposition repeatedly that the Department's practice is to refer retailers initially to wholesalers because the Department can't refund the cost of the cigarettes. They can only refund the cost of the stamps. So it makes sense. Just like if you bought a blender at the store and it's defective, you don't ask the Department for a refund of the tax. You would go back to the person who sold it to you normally, or you don't get that portion of it. So there is nothing in the manual that expressly says you cannot refund the tax to a retailer.  And it would be odd if it did, considering that the rule that's out there published says any person can get that. And so the evidence is undisputed that retailers can obtain refunds for damaged cigarettes, for cigarettes that have been removed from the Attorney General's certified list of brands, or cigarettes that the retailer has not sold or is unable to sell for any reason. Admittedly, this is not an ad applied situation, but I'm interested in terms of how the State interprets this. You've told us in the record where a refund is possible. Is there anything in the record that shows that one or more Native American retailers has, in fact, received a refund? There isn't anything in the record showing that one's been asked for. Mr. Smith recalled one instance of working with a retailer to issue a refund, and that's at ER 121. But he didn't mention whether it was an Indian retailer or not. Okay, I didn't know. What they rely on is one statement that Lee Smith made, that he did not believe there was any statutory or regulatory for providing retailers a refund for delisted, you know, uncertified cigarette brands, and that's at ER 129. But he later testified in the same deposition that such authority exists under that rule, Rule 186, and he specifically mentioned it. And I don't think that you can take a single inconsistency in one witness's deposition regarding the existence of legal authority and somehow create a genuine issue of material fact out of that. The other thing is that the state freely admits that it doesn't compensate wholesalers or retailers for bad debt. If they sell the cigarettes and they can't collect what they're owed from their buyers, you know, that's their business, Chris. The state's not in that business. Very good. Thank you very much for your presentation and your argument, and we'll now hear rebuttal from the Yakama Nation. Thank you, Your Honors. I would like to first address Judge Gilford's comment that the legislature cannot make it so in terms of legal incidence. That is precisely what this court held in the Hammond case. And here I think it's extremely important to reflect that the state struggles to take any definite position with respect to where the legal incidence actually falls when Yakama retailers sell stamped cigarettes. Didn't they say it depends? They did say it depends, and I believe that's an argument only a lawyer could love, they also said. If the legislature's statement of intent controlled, then because the tax is imposed on the first taxable person who possesses, handles, sells, or distributes cigarettes, then the legal incidence would be on the non-Indian wholesaler. However, an analysis of the operative provisions makes it absolutely clear that that's not the case, and the state does not dispute the operative provisions to show that the tax buck doesn't stop with wholesalers. Nevertheless, once the tax buck is stopping with retailers, the state points back to that same statement of intent and says that those retailers have a pre-collection obligation. Can I just get your take on one thing? Out of the Hammond case, our court states, and this is on page 681, they indicate, as a general rule for deciphering legal incidence, the United States Supreme Court has instructed that we are to conduct in quotes, a fair interpretation of the taxing statute as written and applied, citing another Supreme Court case. Doing that in this case, in effect, it seems that the as-applied concept does have some bearing, does it not? Your Honor, my understanding of the court's language there is not necessarily – you asked me a very specific question. Right. About retailers, but we're talking more generally about administrative practice, administrative procedures, and not purely the plain text of the statute. Right. I guess my point is that the states pointed out specifically where there is an ability to get refunds and talked about that there may be not anything specific in here. You say there is no evidence of a refund, but it doesn't matter because we're just looking at the text. So that's why I was getting back to this. It seems to me, if I understand the Supreme Court's instruction, that when we look for legal incidence, we not only look at the text of the statute, but we also look at how it's applied so we can determine the legal incidence. And I'm wondering whether you agree or disagree with that concept. I agree with that, Your Honor. Okay. Now, you heard your opponent say there is a clear direction to pass the tax on. What's your response to that? Judge Newton, I'm glad that you raised that issue. The state is referring to the pre-collection obligation, which is a term that was introduced into the tax scheme in 1995. 1995, coincidentally, is when the operative provisions of the scheme, along with amendments in 2003, those were overhauled to clearly distinguish between the roles of wholesalers and retailers. As I said, at the time of Colville, wholesalers and retailers enjoyed all the same benefits, and it was clear then that the tax buck didn't stop with retailers. All of that has changed, and the pre-collection obligation is not accompanied by any provisions which actually show or require the tax to be passed through. It's a statement, ifso facto, as the Hammond Court addressed, that purports to move the legal incidence to suit the legislature's interests. There is no way, and the state has not identified any way, in which the Department of Revenue could ever confirm whether or not an Indian retailer has fulfilled this so-called pre-collection obligation. It exists only in the abstract. It's simply a term that the legislature has put into the statute to automatically shift the incidence of the tax. In your statement, I don't think you've yet mentioned the 30-day window that wholesalers get that retailers don't get, the time delay. Did you not mention it because it's not significant? No, that is the deferral option. That is one of the key distinctions between now and the 1976 scheme. Time is money. Exactly. Wholesalers have a float. They have that money in pocket. Retailers and Indian retailers who supposedly are fulfilling this pre-collection obligation, acting as a transmittal agent, unlike non-Indian retailers, have no deferral option. There is no indication that they are treated as a transmittal agent, which is the same as was true for retailers in Chickasaw Nation and in Hammond. Very good. We thank you and opposing counsel for your arguments. We appreciate the high quality of the arguments and dealing with this challenging issue. The matter of Confederated Tribes and Bands of the Yakima Indian Nation and versus Christine Gourgeois is submitted, and we thank you both. The court is adjourned for the day. Thank you, Your Honor.
judges: Guilford, Noonan, Smith M.